IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SCOTT THOMASON                                                    PLAINTIFF

V.                                    NO. 4:12-CV-4155

STEVE RANDALL,
WARREN HANSON,
STEVE FALER,
SWS ENGRAVING, L.L.C, and
AMERICAN LEGACY FIREARMS, INC.                                   DEFENDANTS

## MEMORANDUM OPINION

Before the Court are Defendants' Motions for Summary Judgment.  (ECF Nos. 43 & 89).

Defendants move to dismiss all claims against them contending that Scott Thomason lacks

standing to bring these claims in his individual capacity, there was no contract between the

parties, and if there was a contract, the Defendants did not breach the agreement.   Plaintiff has

responded.  (ECF Nos. 52 & 95).  Defendants have replied.  (ECF No. 72).  Plaintiff has filed a

Sur-Reply.  (ECF No. 73).  The Court finds this matter ripe for consideration.

## BACKGROUND

This case arises out of a business dispute involving the custom engraving of over 5,000

commemorative guns called the "1911 Anniversary Pistols." Defendant American Legacy

Firearms ("ALF") was to produce the guns under a license agreement with the National Rifle

Association ("NRA").   Defendants Steve Faler and Warren Hanson operate ALF, which is

headquartered in Colorado.  When ALF receives an order from a customer for a commemorative

gun, ALF purchases generic guns and ships them to a gun engraver for the etching.   SBR

Etchings, Inc. ("SBR"), located in Hope, Arkansas and founded by Defendant Steve Randall, was one of ALF's preferred engraving companies.

Plaintiff Scott Thomason was SBR's insurance agent in the late 1990s and through part of the 2000s.  He and Randall remained in contact after Thomason moved and began working for another insurance company.  Randall and SBR started to encounter financial difficulties in 2008, and Thomason and Randall discussed ways to increase sales.  In an effort to help the company, Thomason began to take engraved samples from SBR to local events, such as the Wild Turkey Federation dinner in Hampton, Arkansas.  On May 22, 2009, Thomason gave $10,000 to SBR in exchange for one share of stock in the company.   From thereon, he became more directly involved in SBR.  Thomason was named Secretary of SBR on August 27, 2009.  On September 4, 2009, acting in his capacity as Secretary, Thomason co-signed a promissory note for a $35,284 loan to SBR.  Although Thomason was never involved in SBR's day-to-day work of engraving guns, Thomason attended trade shows in 2009 and 2010 in an attempt to generate sales.

In the fall of 2010, the Internal Revenue Service ("IRS") notified SBR that it had a tax levy of over $675,000 on SBR's property.  Thomason paid $21,000 to the IRS on behalf of SBR, and SBR also reached out to ALF in hopes of drumming up business in order to pay the taxes. ALF had an interest in keeping SBR in business because SBR used a better "bluing" method than other engraving companies.  Around the same time, ALF was in negotiations with the NRA to obtain a license to use the NRA name for its 1911 Anniversary Pistol.  The parties discussed entering into a partnership agreement in which ALF would provide the salesmanship, SBR and Randall would provide the skilled labor and expertise to engrave guns, and Scott Thomason would provide the capital.  This arrangement is detailed in an email dated October 13, 2010, which Thomason refers to as the "Omnibus Agreement."  (ECF No. 75, Ex. No. 3).

2

As an alternative plan to keeping SBR afloat, the parties discussed forming a new entity that would essentially perform the role of SBR. The new company would have access to the building and equipment owned by SBR and would hire SBR's five skilled employees.  In October 2010, Defendants Faler and Hanson accompanied Thomason to a meeting with Ted Kelton at Peoples State Bank about obtaining an operating loan for the new company. Subsequently, Kelton authorized a loan for $25,000 to Thomason.

On November 3, 2010, ALF's Faler sent two emails outlining a prospective agreement between ALF and a new entity called 3:16 Engraving, LLC ("3:16") to produce the 1911 Anniversary Pistols.  On November 9, 2010, Thomason filed papers with the Arkansas Secretary of State creating 3:16.  Subsequently, 3:16 hired former SBR employees, including Defendant Randall, and paid them three weeks' worth of back pay that SBR owed them.    Between November 2010 and February 2011, 3:16 sent invoices to customers, including ALF, for orders received during that time period.  ALF executed the license agreement with the NRA for the 1911 Anniversary Pistols on December 30, 2010, but only sent one proof to 3:16.  ALF never sent any of the commemorative pistols to 3:16 for engraving.

In early 2011, ALF decided that it did not want to use 3:16 as its engraver for the 1911 Anniversary Pistols. 3:16's employees were unhappy with Thomason, whom they allege was not withholding their income taxes.  Randall, Hanson, and Faler were not satisfied with the way Thomason had organized 3:16.  Thomason was the sole member and they wanted membership interests in the new company.  On February 11, 2011, 3:16's employees resigned and notified Thomason by text message.  They also informed him of their intentions to start a new gun engraving company, SWS Engraving, L.L.C ("SWS Engraving").  SWS Engraving hired all of the former employees of 3:16 and began using the building, equipment, and supplies that had

3

previously belonged to SBR and 3:16.  SWS Engraving took over the 3:16's existing orders, and ALF hired them to engrave the 1911 Anniversary Pistols.

The Arkansas Department of Workforce Services ("DWS") received a form on February 11, 2011 notifying them that 3:16 was no longer in business.  On January 14, 2012, the Arkansas Secretary of State revoked 3:16's charter for failing to pay franchise taxes.  3:16 has never filed articles of dissolution with the Secretary of State or attempted to reinstate its corporate charter.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established.  When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir. 1995).  This is a "threshold inquiry of…whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987).  A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

## DISCUSSION

This suit was filed by Thomason on December 21, 2012 against Randall, Hanson, Faler, SWS Engraving, and ALF (collectively "Defendants").  Thomason alleges multiple theories for recovery: (1) breach of contract; (2) unjust enrichment or implied contract; (3) promissory estoppel; (4) piercing the corporate veil; (5) interference with contractual relationship or business

expectancy; (6) civil conspiracy; (7) and fraud.  Defendants move for summary judgment, contending that Thomason lacks standing to assert claims that belong to 3:16, no contract ever existed between Defendants and 3:16 or Defendants and Thomason, and that even if a contract did exist, 3:16 breached the agreement and was unable to perform.  Thomason argues that he has standing to assert the claims of 3:16, there was a contract, and that ALF repudiated the contract. The Court will first examine whether Thomason has standing to assert 3:16's claims as "standing is a threshold inquiry and jurisdictional perquisite that must be resolved before reaching the merits of the suit."  *Curtis Lumber Co. v. Louisiana Pac. Corp.*, 618 F.3d 762, 770 (8th Cir. 2010).

### A.  Standing to assert the claims of 3:16

Arkansas has recognized the nearly universal rule that a corporation and its stockholders are separate and distinct, even though a stockholder may own the majority or all of the stock. *See Farm Bureau Ins. Co. of Arkansas, Inc. v. Running M Farms, Inc.*, 336 Ark. 480, 487, 237 S.W.3d 32, 37 (2006).[1]  In order for a shareholder to bring an individual cause of action against a third party, the shareholder must have been injured directly or independently of the corporation. *See Farm Bureau Ins. Co. of Arkansas, Inc*, 336 Ark at 487, 237 S.W.3d at 37.  Individual shareholders have no standing to sue in their individual capacities for injuries allegedly suffered primarily by the corporation.  *Bomar v. Moser*, 369 Ark. 123, 128, 251 S.W.3d 234, 239 (2007). Direct suits brought by a shareholder are only appropriate where the shareholder asserts an injury that is distinct and separate from the injury caused to the corporation.  *Id.* at 129, 251 S.W.3d at 240.

---

[1] Arkansas courts have applied the same rule to limited liability companies and their members.  *See Anderson v. Stewart*, 366 Ark. 203, 206, 234 S.W.3d 295, 298 (2006); *K.C. Properties of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 32, 280 S.W.3d 1, 15 (2008).

In this action, a large portion of Thomason's purported damages stem from the breach of an alleged contract between 3:16 and ALF. The injuries allegedly suffered from this breach of contract were primarily suffered by 3:16, not by Thomason directly or independently of 3:16. His tortious interference and civil conspiracy claims rely on this breach of contract claim, and the injuries stemming from these claims were also suffered primarily by 3:16 and not Thomason individually. As part of Thomason's unjust enrichment claim, he alleges that 3:16 conferred benefits to ALF and expected to be compensated. Likewise, 3:16 suffered the primary damages, not Thomason as its sole member. Thomason suffered no separate and distinct injury from Defendants' actions that form the basis of these claims.

Additionally, Thomason asserts that ALF's and SWS Engraving's corporate veils should be pierced, holding defendants Randall, Faler, and Hanson individually liable for the profits they made to the detriment of 3:16. While Thomason acknowledges that these counts of his complaint belong to 3:16, he contends that he has standing to bring them individually because Defendants waived the standing issue by failing to raise their objection until filing a motion for summary judgment. Additionally, he argues that 3:16 has been dissolved and the claims inured to Thomason as 3:16's sole member. Alternatively, Thomason maintains that 3:16 ratified and assigned this action to Thomason.

Thomason's first contention fails because standing relates to the justiciability of the case and cannot be waived by the parties. *Friends of Boundary Waters Wildnerness v. Thomas*, 53 F.3d 881, 886 (8th Cir. 1995). The Court believes Thomason is confusing standing with real party in interest, which requires that every "action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). The real party in interest rule demands that the plaintiff must "actually possess, under substantive law, the right sought to be enforced." *Walker Mfg.,*

6

*Inc. v. Hoffmann*, Inc., 220 F. Supp. 2d 1024, 1030 (N.D. Iowa 2002). Unlike standing, real party in interest is not jurisdictional and can be cured under Federal Rule of Civil Procedure 17(a). *Id.* at 1030, n. 6. A real party in interest objection is deemed waived if it is not raised in "a timely or seasonable fashion." *Id.* at 1029. Defendants have not raised the real the party in interest objection, but even if they had, it would not be untimely at the summary judgment stage. *See Walker Mfg., Inc.*, 220 F.Supp at 1030; *Consul Gen. of Republic of Indonesia v. Bill's Rentals, Inc.*, 330 F.3d 1041, 1047 (8th Cir. 2003).

Thomason's second contention is that this action inured to him upon the dissolution of 3:16, providing him with the standing to sue. He argues that a cause of action is an asset of an entity, and that the assets were distributed to him when 3:16 dissolved. Thomason cites to bankruptcy cases to establish that a cause of action is an asset. These cases look to the Bankruptcy Code, which is not relevant here. There is no authority in Arkansas holding that a cause of action is a property interest that can devolve to a member of a limited liability company upon dissolution. Other courts that have considered this argument have found that an unasserted contract claim is "not a ripened claim on which action was begun by the corporation, nor is it a tangible representation of a fixed ascertainable debt." *Davis v. St. Paul Fire & Marine Ins. Co.*, 727 F. Supp. 549, 552 (D.S.D. 1989). Therefore, courts have held that an unasserted breach of contract claim is not property that devolves to shareholders upon dissolution. *Id.* at 552-553; *Hutson v. Fulgham Indus., Inc.*, 869 F.2d 1457, 1462 (11th Cir. 1989). Thus, the Court finds that Thomason's second contention is without merit.

Lastly, in an effort to ensure that he has standing, Thomason provides two documents titled, "Consent and Ratification of Dissolution of 3:16 Engraving, LLC" and "Ratification and Assignment of All Assets of 3:16 Engraving, LLC," both signed on September 15, 2014 by

Thomason in his capacity as sole member of 3:16. Thomason executed these documents after the Defendants raised the issue of standing in their first Motion for Summary Judgment. While the "Consent and Ratification of Dissolution of 3:16 Engraving, LLC" may be sufficient to trigger dissolution, the Court finds these documents insufficient to provide Thomason with standing to assert the claims belonging to 3:16. As for an assignment, Thomason has not offered any legal support for the proposition that a limited liability company can assign its interest in an unasserted breach of contract claim to one of its members. Similarly, the support Thomason cites for a limited liability company ratifying an action prosecuted by one of its members does not relate to standing, but to real party in interest issues. Under Federal Rule of Civil Procedure 17, "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until . . . a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a). As previously addressed by the Court, real party in interest differs from standing, and a limited liability company cannot confer standing upon one of its members through ratification.

Furthermore, the revocation of 3:16's charter thwarts Thomason's attempts to pursue 3:16's claims in this lawsuit. In Arkansas, a corporation whose charter has been revoked does not have the capacity to sue. *Schmidt v. McIlroy Bank & Trust*, 306 Ark. 28, 33, 811 S.W.2d 281, 284 (1991).[2] If a limited liability company with a revoked charter could simply ratify a lawsuit prosecuted by one of its members or alternatively assign a cause of action to the member, the rule disallowing lawsuits by corporate entities with revoked charters would be meaningless.

---

[2] There is no authority in Arkansas regarding whether a limited liability company with a revoked charter lacks the capacity to sue; however, the policy behind the rule for corporations would apply to limited liability companies. If the corporate charter is revoked when the suit is filed, then the corporation does not legally exist. *HRR Arkansas, Inc. v. River City Contractors, Inc.*, 350 Ark. 420, 428, 87 S.W.3d 232, 237 (2002). A lawsuit must be initiated by a person, natural or artificial. *Comm. for Util. Trimming, Inc. v. Hamilton*, 290 Ark. 283, 285, 718 S.W.2d 933, 934 (1986).

An argument similar to Thomason's was offered by the appellants in *Schmidt*, who were attempting to bring suit in their individual capacity as partners after their family farming corporation's charter was revoked and they became individually liable for the obligations of the *de facto* corporation. *Schmidt*, 306 Ark. at 33, 811 S.W.2d at 283. The Arkansas Supreme Court maintained that the reasoning behind the cases holding corporate officers and shareholders individually liable is that they ought not avoid personal liability because of their nonfeasance. "On the other hand, it does not follow that they should be allowed to benefit by their nonfeasance by allowing them to bring suit as partners." *Id.* at 33, 811 S.W.2d 283. Similarly, Thomason should not be allowed to benefit from neglecting to pay 3:16's franchise taxes by prosecuting 3:16's claims in his individual capacity.

Because Thomason cites no direct or independent injury stemming from ALF's alleged breach of the agreement with 3:16 to produce the 1911 Anniversary Pistols, he lacks standing to assert this claim. Thomason also fails to cite any independent injury relating to 3:16's unjust enrichment claim, or from a civil conspiracy or tortious interference with the alleged contract between ALF and 3:16. There is no allegation of direct injury that would necessitate piercing the corporate veil of ALF or SWS Engraving. These purported injuries were suffered primarily by 3:16. His contentions that the Defendants waived standing or that 3:16's claims inured to him upon its dissolution are without merit. Therefore, the Court finds that Thomason lacks standing to assert these claims.

### B. Individual claims

Thomason maintains that he was individually injured by Defendants' breach of the "Omnibus Agreement," which was in the form of an email. Additionally, Thomason seeks recovery on theories of unjust enrichment, implied contract, and promissory estoppel.

Furthermore, he alleges that Defendants Faler and Hanson made false representations of material fact, inducing him to enter into the Omnibus Agreement and spend personal funds in furtherance of the agreement between 3:16 and ALF.

       **i.**       **Breach of the Omnibus Agreement**

Thomason refers to an email from Faler to Randall, Hanson, and Thomason as the "Omnibus Agreement." In the email, Faler suggests an arrangement that would keep SBR afloat. He proposes a breakdown of the ownership interest in SBR's future profits among Thomason, Randall, Hanson, and himself. The subject line of the email reads, "partnership agreement." Thomason contends that this email created an express contract between the parties, and that ALF, Faler, and Hanson materially breached the agreement when they repudiated the contract prior to the time Thomason's performance was due. Defendants argue that no contract ever existed between the parties and that the email only reveals that the parties were contemplating entering into an agreement.

Under Arkansas law, the essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *City of Dardanelle v. City of Russellville*, 372 Ark. 486, 490, 277 S.W.3d 562, 566 (2008). The Supreme Court of Arkansas has articulated two legal principles that govern the determination of whether parties entered a valid contract: (1) a court cannot make a contract for the parties but can only construe and enforce the contract they have made; and if there is no meeting of the minds, there is no contract; (2) in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. *Williamson v. Sanofi Winthrop Pharm., Inc.*, 347 Ark. 89, 98, 60 S.W.3d 428, 434 (2001).

The express language of Faler's email indicates that he contemplated further discussion: "As fast as I can get this done, there will be changes.  Warren [Hanson] and I want to meet down there next week with you and formally agree on everything."  (ECF No. 75, Ex. No. 3).  The language of this email does not manifest a mutual agreement of the parties, but rather a mere proposal to keep a company in business.   The subsequent conduct and later emails of the parties confirms that the parties had no "meeting of the minds" and never intended for this email to be a binding contract.  In the weeks following this email, the parties decided to create an entirely new engraving company.  Thomason formed 3:16 and made himself its sole member.  There was no profit-sharing arrangement.   Based on this undisputed evidence, the Court finds that no reasonable jury could conclude that Faler's email constituted a binding, enforceable contract.

### ii.        Unjust Enrichment or Implied Contract

Thomason asserts that if he and the Defendants did not have an express contract, they had an implied contract to replace SBR with a new company that would contract with ALF to engrave the 1911 Anniversary Pistols.  He also alleges that he personally purchased supplies, paid the payroll, and paid $21,000 worth of back taxes for SBR, and is therefore entitled to recovery under the theory of unjust enrichment.[3]

Arkansas law has recognized two types of implied contracts: those properly called "implied contracts," where the contract is inferred from the acts of the parties, and those which are more properly referred to as quasi-contracts or constructive contracts, where the law implies an obligation.  *Steed v. Busby*, 268 Ark. 1, 7, 593 S.W.2d 34, 38 (1980).  "[A]n action based on unjust enrichment is maintainable where a person has received money or its equivalent under

---

[3] Additionally, Thomason alleges an unjust enrichment claim on behalf of 3:16, but the Court has determined that Thomason does not have standing to assert 3:16's claims.

such circumstances that, in equity and good conscience, he or she ought not to retain." *Deutsche Bank Nat. Trust Co. v. Austin*, 2011 Ark. App. 531, at 7, 385 S.W.3d 381, 387.

Thomason claims SBR was unjustly enriched by his actions; however, SBR is not a defendant in this action. Therefore, Thomason's unjust enrichment claim fails.

As for his implied contract claim, there is a genuine dispute of material fact as to whether Thomason and ALF had an implied contract to create a new company that would work with ALF to engrave the Anniversary Pistols. Thomason has presented email exchanges where the parties discuss forming a new entity. Thomason, Hanson, and Faler each testified in their depositions that in October 2010 they met with Ted Kelton from Peoples State Bank, who was Thomason's banker, about getting an operating loan for the new business. Hanson revealed that the potential project with the NRA was discussed at the meeting. (ECF No. 49, Ex. No. 2, p. 17, lines 16-18). According to Thomason, Kelton said they had to have an agreement before Kelton would authorize the loan. (ECF No. 48, Ex. No. 1, p. 50, lines 18-19). In an email dated November 3, 2010, Defendant Faler indicated that he had "sent a long email to Ted answering some of his questions." (ECF No. 75, Ex. No. 4). This evidence suggests Hanson and Faler were trying to help Thomason get a loan to start 3:16, and could support the inference that there was an implied contract between the parties to start a new business that would produce the 1911 Anniversary Pistols.

Defendants deny that Kelton gave Thomason the loan based on the money the 1911 Anniversary Pistols would generate, but they have not produced any evidence or emails with Kelton to corroborate their position. A question of material fact remains as to whether the parties had an implied contract to start a new gun engraving company that would produce the

1911 Anniversary Pistols.   Accordingly, summary judgment on Thomason's implied contract claim is inappropriate.

### iii.      Promissory Estoppel

Thomason contends that Faler and Hanson promised that if he created a new gun engraving company, then ALF would use the new company to engrave the 1911 Anniversary Pistols.   In reliance on that promise, Thomason got a $25,000 loan from Peoples State Bank and created 3:16.

Under Arkansas law, promissory estoppel requires (1) the making of a promise, (2) intent by the promisor that the promise be relied upon, (3) reliance upon the promise by the promise, and (4) injustice resulting from a refusal to enforce the promise.  *Curtis Lumber Co.*, 618 F.3d at 780.  The Supreme Court of Arkansas has held that "the party asserting estoppel must prove it strictly, there must be a certainty to every intent, the facts constituting it must not be taken by argument or inference, and nothing can be supplied by intendment."  *K.C. Properties of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 30, 280 S.W.3d 1, 14 (2008).  Whether there was actual reliance and whether reliance was reasonable is a question for the trier of fact.  *Id.* at 31, 280 S.W.3d at 14.  A "promise" is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."  Restatement (Second) of Contracts § 2 (1981).

The Court finds that reasonable minds could differ as to whether Faler and Hanson promised Thomason that if he created a new company, ALF would hire the company to engrave the 1911 Anniversary Pistols.  In emails to Thomason, Faler stated that the pistols "would be engraved by 3:16" and that "ALF prefers to use 3:16 as to any other engraver."  These emails were sent after Faler, Hanson, and Thomason met with Kelton at Peoples State Bank about an

operating loan for a new company. A few days after Thomason received the emails, he filed Articles of Organization with the Arkansas Secretary of State, forming 3:16. Thomason alleges that he created 3:16 and got the operating loan in reliance on Faler and Hanson's promise. Faler and Hanson maintain that they were to be members of 3:16, and it is undisputed that Thomason made himself the sole member. However, Thomason claims that the plan was to make Faler and Hanson members later. ALF sent one proof for the 1911 Anniversary Pistol to 3:16, suggesting that Faler and Hanson may have conceded to Thomason's plan to make them members later. Because there are material facts in dispute, summary judgment on Thomason's promissory estoppel claim is inappropriate.

### iv.    Fraud

In his Second Amended Complaint, filed on October 27, 2014, Thomason included a new count for fraud. He contends that Faler and Hanson told him that if he invested money in creating a new company, ALF would use the new company to engrave the 1911 Anniversary Pistols. However, Faler and Hanson maintain that they always reserved the right to use whatever engraver they wished. Thomason claims that this was never communicated to him and that Faler and Hanson's representations were made with the intention of inducing him to spend his personal money to obtain a loan, form a new company, and employ the SBR employees. Defendants argue that there was no false representation of material fact, and that the new fraud claim fails as a matter of law because of the statute of limitations.

Under Arkansas law, the statute of limitations on a fraud claim is three years. Ark. Code. Ann. § 16-56-105. However, the statute of limitations can be tolled until the party having the cause of action discovers the fraud or should have discovered it. *See Martin v. Arthur*, 339 Ark. 149, 154, 3 S.W.3d 684, 687 (1999). Thomason should have discovered any fraud

perpetuated by the Defendants on February 11, 2011, when Randall and 3:16's other employees resigned and notified him of their plan to start a new engraving business that would take over the engraving of the 1911 Anniversary Pistols.  The Second Amended Complaint was filed more than three years after this date.  Nevertheless, Federal Rule of Civil Procedure 15(c)(1)(B) provides that an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  "The basic inquiry is whether the amended complaint is related to the general fact situation alleged in the original pleading."  *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1543 (8th Cir. 1996).  This rule has been liberally construed and permits amendments that change the legal theory of the action.  *Id.* Here, Thomason's allegations of fraud arise out of the same conduct, transaction, and occurrences set out in the original pleading, which Thomason filed on December 21, 2012. Thus, the Court finds that the fraud claim relates back to the original complaint and is not barred by the statute of limitations.

The tort of fraud requires that the plaintiff show: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance.  *Fleming v. Cox Law Firm*, 363 Ark. 17, 21, 210 S.W.3d 866, 868 (2005). "[R]epresentations that are promissory in nature, or of facts that will exist in the future, though false, will not support an action for fraud."  *Hobson v. Entergy Arkansas, Inc.*, 2014 Ark. App. 101, at 9, 432 S.W.3d 117, 124.  However, this rule will not apply if the party making the false

promise knew it would not be kept at the time it was made.  *Stine v. Sanders*, 66 Ark. App. 49, 58, 987 S.W.2d 289, 295 (1999).  The intent of the promisor is a question of fact.  *Id.*

Faler and Hanson's alleged representation is promissory in nature: they told Thomason that if he invested money in a new company, then ALF would use the new company to do the engraving for the 1911 Anniverary Pistols.  ALF did not even have the license from the NRA for the pistols until after 3:16 was formed.   Nevertheless, if Faler and Hanson made the representation intending to reserve the right to use any engraver they desired, the representation would have been false when it was made.  The only written evidence of any representation made by Faler or Hanson comes from two emails outlining the prospective agreement between ALF and 3:16.   In one email, Faler provides that the NRA pistols "will be engraved by 3:16 Engraving," which Thomason had not yet formed.  (ECF No. 75, Ex. No. 4).  In another email sent hours later, Faler writes, "ALF prefers to use 3:16 Engraving as to any other engraver." (ECF No. 75, Ex. No. 4).  This language does not clarify Faler and Hanson's intention.  The Court finds that there is a genuine issue of material fact as to whether Defendants made a false representation regarding their intention to use a new company created by Thomason as their engraver for the 1911 Anniversary Pistols.   Thus, summary judgment on this claim is not appropriate.

**CONCLUSION**

For the reasons explained above, Defendants' Motions for Summary Judgment (ECF Nos. 43 & 89) are **GRANTED IN PART** and **DENIED IN PART**.   Thomason's implied contract, promissory estoppel, and fraud claims remain.  His breach of contract, piercing the corporate veil, interference with contractual relationship or business expectancy, civil conspiracy, and unjust enrichment claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**,  this 20th day of January, 2015.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge